IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-01673-CMA

M.M.H.,

    Plaintiff,

v.

KILOLO KIJAKAZI, acting Commissioner of Social Security,[1]

    Defendant.

**ORDER REVERSING DENIAL OF SOCIAL SECURITY DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME BENEFITS**

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff M.M.H.'s application for disability insurance benefits and supplemental security income. Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff argues that the ALJ (1) erred in evaluating her complex regional pain syndrome ("CRPS") and subjective pain symptoms; (2) failed to properly evaluate medical opinion evidence; (3) did not consider all of her severe impairments; and (4) did not properly formulate her Residual Functional Capacity ("RFC"). For the reasons set forth below, the Court vacates the decision of the Commissioner to deny Plaintiff's

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

application for disability insurance benefits and supplemental security income and remands the matter to the ALJ.

## I.  BACKGROUND

Plaintiff first filed an application for Social Security Disability Benefits and Supplemental Security Income Benefits under Titles II and XVI of the Social Security Act on February 12, 2015. (Doc. # 11-5 at 193–208.)[2] Plaintiff alleges a disability onset date of February 15, 2012, when she slipped and fell on ice while she was at her job at a pet supply store and broke her left ankle. (Doc. # 11-2 at 17.) She also sustained a left knee meniscus tear and injuries to her right shoulder and right elbow. (Doc. # 11-7 at 371.) Plaintiff claims disability due to the above injuries from her fall, CRPS, degenerative joint disease, depression, and anxiety.

Plaintiff's application for social security benefits was first denied on July 16, 2015. (Doc. # 11-4 at 118.) Plaintiff filed a written request for a hearing on July 21, 2015. (*Id.* at 128.) ALJ Scott Bryant held a hearing concerning Plaintiff's application on April 13, 2017. (Doc. # 11-2 at 32.) Both Plaintiff and an impartial vocational expert, Cyndee Burnett, testified at the hearing. (*Id.*)

On May 19, 2017, the ALJ denied Plaintiff's request for benefits. (*Id.* at 24.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 15, 2012, the alleged onset date. (*Id.* at 14.) At step two, the ALJ found that Plaintiff has numerous severe impairments, including major depressive disorder,

---

[2] The exhibits filed at Doc. # 11 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (*e.g.*, Doc. # 11-2) and the page number from the Administrative Record (*e.g.*, at 43).

2

anxiety disorder, somatoform disorder, bilateral knee pain, and CRPS. (*Id.*) At step three, the ALJ concluded that Plaintiff's impairments do not meet or exceed the conditions listed in the disability regulations. (*Id.* at 15–16.) The ALJ determined that Plaintiff has the residual functional capacity to perform light work with the following abilities and limitations:

> [T]he claimant can have no exposure to ramps, stairs, ladders, ropes, scaffolds, or unprotected heights; during an eight-hour workday, the claimant can sit for a total of six hours, and stand and/or walk for a combined total of six hours, and must have the opportunity to sit for five minutes (while remaining productive) after an hour of standing; the claimant can occasionally interact with the public; the claimant can perform work requiring up to three months' time to acquire the information and develop the facility needed for an average job performance; and the claimant cannot perform production-pace work.

(*Id.* at 16.)

At step four, the ALJ found that Plaintiff is unable to perform past relevant work. (*Id.* at 22.) Finally, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering her age, education, work experience, and residual functional capacity. (*Id.* at 23.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 24.)

Plaintiff requested review of the ALJ's decision. (*Id.* at 6.) On April 30, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1.) When the Appeals Council declined review, the ALJ's decision became the final decision of the Commissioner. *See Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).

Plaintiff initiated the instant action on July 2, 2018, seeking reversal of the ALJ's decision and remand for award of benefits or a new hearing. (Doc. # 1.) She filed her Opening Brief (Doc. # 15) on October 10, 2018. The Commissioner filed a Response Brief, (Doc. # 16), arguing that the ALJ comported with the requirements for evaluating Plaintiff's CRPS and that the ALJ's decision is supported by substantial evidence. Plaintiff followed with her Reply. (Doc. # 17.)

## II.     LEGAL STANDARDS

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 217 (1938). Substantial evidence "is more than a scintilla, but less than a preponderance." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Thus, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace

the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it *de novo*." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass*, 43 F.3d at 1395.

In addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide [the reviewing court] with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983)); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and citing cases). The standard for harmless error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual

5

matter in any other way." *Allen*, 357 F.3d at 1145; *see also Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010); *Lynn P. v. Berryhill*, No. 17-CV-212-JFJ, 2018 WL 3142937, *3 (N.D. Okla. June 27, 2018). Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III.   DISCUSSION

Plaintiff raises four grounds of error in her appeal. First, Plaintiff argues that the ALJ erred in evaluating her CRPS and subjective pain symptoms by failing to follow applicable guidelines for evaluating CRPS claims established by SSR 03-2P, 2003 WL 22814447.[3] (Doc. # 15 at 5.) The Court agrees that the ALJ did not apply the correct legal standard in evaluating Plaintiff's CRPS and concludes that remand is warranted on that basis.

**A.   ALJ'S EVALUATION OF PLAINTIFF'S CRPS**

1.   Additional Background

Plaintiff's CRPS is related to her left ankle, which she fractured when she slipped on ice and fell in February 2012. (Doc. # 11-7 at 364.) She was 47 years old at that time. (Doc. # 11-2 at 23.) Plaintiff underwent open reduction/internal fixation surgery on her left ankle 10 days after her fall. (Doc. # 11-8 at 409.) She engaged in physical

---

[3] Plaintiff frames this issue as whether the ALJ properly evaluated her "credibility" regarding her pain symptoms of CRPS. (Doc. # 15 at 5.) However, the ALJ did not use the term "credibility" in his decision. *See* (Doc. # 11-2 at 9–29). The Court notes that SSR 16-3P eliminated the use of the term "credibility" in order to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2016 WL 1110929, at *2. Accordingly, the Court will take Plaintiff's argument to be an objection to the way the ALJ evaluated her subjective symptoms.

therapy, including pool therapy, for her ankle throughout the summer and fall of 2012. *See* (*id.* at 375; Doc. # 11-7 at 367.) At some follow up appointments during that time period Plaintiff indicated her pain was severe, *see* (Doc. # 11-8 at 375) (describing her pain as "5/5"), whereas at others she reported that her pain was improving, *see* (Doc. # 11-7 at 370) (reporting that "she feels she is getting better"). Treatment notes from October 2012 indicate that her left ankle exhibited changes "suggestive of complex regional pain syndrome (CRPS)," including color and temperature changes. (*Id.* at 349–50.)

In March 2013 Plaintiff continued to complain of pain in her left ankle and received a second opinion from Dr. Mark J. Conklin, who advised that she "may have complex regional pain syndrome" and recommended removal of the hardware in her left ankle. (*Id.* at 326.) Plaintiff had surgery in May 2013 to remove the hardware. (*Id.* at 305; Doc. # 11-8 at 423.) After that surgery, Plaintiff had follow up appointments where her treating physician noted that her left ankle pain levels had "escalated" and she was using crutches again and had to take more pain medication, (Doc. # 11-7 at 299), and appointments where Plaintiff reported that she felt her left ankle was "improving," (*id.* at 302).

The medical records show that Plaintiff continued to consistently report pain in her left ankle and seek related treatment from the onset date in 2012 through the end of the available records in 2017. For example, February 2015 treatment notes from Clear Creek Family Practice report that Plaintiff "has had terrible pain" in her left ankle during the years since her fall. (Doc. # 11-11 at 571.) Some of the most recent available

records from April 2017 show that Plaintiff continued to complain of severe pain and was assessed by Pinnacle Foot and Ankle Clinic as having CRPS of the left foot and ankle. (Doc. # 11-15 at 841–42.) Plaintiff reported that her pain was a "6/10" and described at as "sharp, shooting localized to the foot." (*Id.* at 841.) A CT scan showed "diffuse osteopenia to the right foot and ankle suggesting possible Sudek's atrophy, a common presentation of chronic CRPS." (*Id.* at 842.) Plaintiff's treating doctor recommended a referral to a Neurologist/Pain Management Specialist for management of her chronic pain issues and CRPS. (*Id.*)

At the hearing before the ALJ in April 2017, Plaintiff testified that "walking hurts" at "pretty much every step." (Doc. # 11-2 at 50.) She reported that she tried to do exercises in bed for her range of motion and to strengthen her muscles, but that "all of it triggers pain." (*Id.* at 50–53.) She testified she could walk one block before the pain got too bad and she needed to lie down. (*Id.* at 63.) She also stated that walking caused her left ankle and foot to swell, and that the longest she could stand before swelling started was "maybe an hour." (*Id.* at 69.)

      2.    <u>Legal Standards</u>

CRPS is a unique chronic pain syndrome often resulting from trauma to a single extremity and characterized by complaints of intense pain that "is out of proportion to the severity of the injury sustained." SSR 03-2P, 2003 WL 22814447, at *1. Because the pathogenesis of CRPS is not entirely understood, the Social Security Administration issued a ruling setting forth guidelines for ALJs to follow in adjudicating disability claims based on CRPS. *Id.* The failure to apply the guidelines in SSR 03-2P is reversible legal

8

error. *Maya T. v. Saul*, No. 6:19-cv-810-SI, 2020 WL 2301314, at *3 (D. Or. May 8, 2020); *see also Carroll v. Berryhill*, No. 3:15-cv-503-GMB, 2017 WL 559581, at *4 (M.D. Ala. Feb. 10, 2017) (observing that district courts "routinely hold that the failure to assess the claimant's CRPS in accordance with SSR 03-2P undermines the ALJ's determinations with respect to medical opinion evidence, Plaintiff's credibility, and RFC determination").

SSR 03-2P explains that in addition to the presence of persistent complaints of severe pain, clinical signs of CRPS include swelling, autonomic instability (seen as changes in skin color or texture, changes in sweating, changes in skin temperature, and abnormal pilomotor erection), abnormal hair or nail growth, osteoporosis, or involuntary movements of the affected region of the initial injury. SSR 03-2P, 2003 WL 22814447, at *4. SSR 03-2P cautions that it is common in CRPS cases that these signs "are not present continuously" or "may be present in one examination and not appear at another." *Id.* Accordingly, "conflicting evidence in the medical record is not unusual" in CRPS cases and does "not affect a finding that a medically determinable impairment is present." *Id.* at *4–5.

SSR 03-2P provides that ALJs should use the sequential evaluation process for CRPS, just as for any other impairment, and should evaluate subjective symptom statements in accordance with existing regulations. *Id.* at *6–8; *see* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304. Once CRPS has been established as a medically determinable impairment, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the

9

symptoms limit the individual's ability to do basic work activities. SSR 03-2P, 2003 WL 22814447, at *6. When the individual's subjective symptom statements are not substantiated by objective medical evidence, as is typical of CRPS, the ALJ must "make a finding on the credibility of the individual's statements based on a consideration of the entire case record."[4] *Id.*; *see Johnson v. Colvin*, No. 13-C-1023, 2014 WL 2765701, at *2 (E.D. Wis. June 18, 2014) (noting that "it will likely often be the case with CRPS" that "the claimant's statements are not substantiated by objective medical evidence"). 20 C.F.R. § 404.1529 sets forth certain factors the ALJ should consider in weighing a claimant's subjective reports.[5] However, Tenth Circuit precedent "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's [subjective symptoms]." *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

---

[4] This language predates SSR 16-3P, 2016 WL 1110929, which removed the term "credibility" in evaluating an individual's subjective symptoms.

[5] These factors include:

> (i) the claimant's daily activities;
> (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms;
> (iii) precipitating and aggravating factors;
> (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms;
> (v) treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms;
> (vi) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and
> (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

In addition to requiring ALJs adjudicating CRPS claims to evaluate subjective symptoms in line with existing guidelines, SSR 03-2P also provides that third party information, including evidence from medical practitioners who have provided services to the individual and who may or may not be "acceptable medical sources," is often critical in deciding whether an individual's subjective symptoms are consistent with the entire record.[6] SSR 03-2P, 2013 WL 22814447, at *7. "Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.* When additional information is needed to evaluate an individual's subjective symptoms, SSR 03-2P requires ALJs to "make every reasonable effort to obtain" such information. *Id.* at *8. Because of the nature of CRPS, it is important to review information that can depict an individual's capacities over a period of time to "establish a longitudinal picture of the individual's status." *Id.* at *7.

---

[6] SSR 03-2P provides that third-party information may include, but is not limited to:

- information from neighbors, friends, relatives, or clergy;
- statements from such individuals as past employers, rehabilitation counselors, or teachers about the individual's impairment(s) and the effects of the impairment(s) on the individual's functioning in the work place, rehabilitation facility, or educational institution;
- statements from other practitioners with knowledge of the individual, e.g., nurse-practitioners, physicians' assistants, naturopaths, therapists, social workers, and chiropractors;
- statements from other sources with knowledge of the individual's ability to function in daily activities; and
- the individual's own record (such as a diary, journal, or notes) of his or her own impairment(s) and its impact on function over time.

SSR 03-2P, 2003 WL 22814447, at *7.

3.     Analysis

Plaintiff argues that the ALJ committed reversible error by failing to apply SSR 03-2P in evaluating her subjective pain symptoms and determining her RFC at step three. (Doc. # 15 at 5.) In response, Defendant argues that although the ALJ did not mention SSR 03-2P in his decision, the ALJ comported with its requirements and appropriately determined that Plaintiff's symptoms statements were not consistent with the objective medical evidence and other evidence in the record. (Doc. # 16 at 10–12.) The Court agrees with Plaintiff.

First, although the ALJ identified CRPS as a "severe impairment" at step two, *see* (Doc. # 11-2 at 14), the Court does not have sufficient basis to determine that the ALJ appropriately followed the requirements of SSR 03-2P in the subsequent steps of his analysis. Nowhere in his decision does the ALJ acknowledge the particular characteristics of CRPS, including that it often features "a degree of pain reported [that] is out of proportion to the severity of the injury sustained by the individual." SSR 03-2P, 2003 WL 22814447, at *1. In the ALJ's lengthy summary of the medical records and other evidence, the ALJ mentioned Plaintiff's CRPS only twice. See (Doc. # 11-2 at 16–22.) First, the ALJ acknowledged that Plaintiff "had some complex regional pain symptoms" in the summer of 2013, (*id.* at 18), and second, the ALJ noted that a CT scan in April 2017 "showed diffuse osteopenia of the right foot and ankle, suggesting possibly Sudeck's atrophy, reportedly a common presentation of chronic complex regional pain syndrome" (*id.* at 21.) Otherwise, and despite identifying CRPS as a severe impairment, the ALJ gave short shrift to Plaintiff's CRPS as a relevant

consideration in evaluating both her subjective pain symptoms and her RFC. The absence of meaningful consideration of Plaintiff's CRPS does not give the Court sufficient basis to determine that the ALJ followed appropriate legal principles established by SSR 03-2P. *See Byron*, 742 F.2d at 1285; *Volk v. Astrue*, No. 3:11-cv-533-J-TEM, 2012 WL 4466480, at *4 (M.D. Fla. Sept. 27, 2012) ("[T]he mere mention of diagnosis and symptoms which may be associated with [CRPS] does not equate to an evaluation of the intensity, persistence, and limiting effects of Plaintiff's CRPS as required by SSR 03-2P." (internal quotation marks omitted)); *see also Squires v. Comm'r of Soc. Sec.*, No. 6:20-cv-477-LRH, 2021 WL 4197716, at *6 (M.D. Fla. Sept. 15, 2021) ("Courts have found reversible error where . . . the ALJ fails to cite or even address SSR 03-2P even where, as here, the ALJ finds the impairment to be severe at Step Two of the sequential evaluation process . . . .").

Second, the ALJ did not appropriately evaluate Plaintiff's subjective pain symptoms in accordance with SSR 03-2P. "Properly evaluating subjective complaints of pain is especially essential, and complicated, when the claimant suffers from [CRPS]." *Valdora v. Comm'r of Soc. Sec.*, No. 08-5519 (JBS), 2009 WL 4126194, at *13 (D.N.J. Nov. 23, 2009). At step three, the ALJ engaged in a detailed review of the medical record and determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. # 11-2 at 17–18.) Accordingly, the ALJ considered Plaintiff's subjective symptoms "only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (*Id.* at 18.) To

13

demonstrate these inconsistencies, the ALJ summarized five years of treatment records showing that Plaintiff, at times, said she was "feeling better" or that physical therapy was helpful, and, at other times, reported high levels of physical pain. The ALJ did not acknowledge that "[t]ransient findings are characteristic" of CRPS. SSR 03-2P, 2003 WL 22814447, at *4 ("It may be noted in the treatment records that [CRPS] signs are not present continuously, or the signs may be present at one examination and not appear at another."). Indeed, the difficulty of evaluating the "ebb and flow" of CRPS signs is, in part, why the Social Security Administration issued specific guidance for evaluating disability claims based on CRPS. *Bell v. Comm'r of Soc. Sec.*, No. 3:18-cv-1621, 2019 WL 6465306, at *1 (N.D. Ohio Dec. 2, 2019).

Further, the ALJ improperly discounted Plaintiff's subjective symptoms on the basis that her symptoms are inconsistent with the objective medical evidence. For example, the ALJ found that Plaintiff's "allegations are inconsistent with diagnostic imagining" and cited various imaging showing "unremarkable" results seemingly at odds with Plaintiff's reported pain levels. (Doc. # 11-2 at 20.) The Court agrees with those courts that "have found reversible error when an ALJ relies on the lack of objective medical evidence to discount the subjective complaints of a claimant with [CRPS]." *Squires*, 2021 WL 4197716, at *6; *see Hunt v. Astrue*, No. EDCV 08-00299, 2009 WL 1519543, at *5 (C.D. Cal. May 29, 2009) ("CRPS is a disease diagnosed primarily based on subjective complaints, and the absence of objective medical evidence, such as x-rays or laboratory tests, cannot be cited as a legitimate basis for rejecting plaintiff's subjective pain and limitations testimony." (internal quotation marks omitted)).

14

Next, it does not appear that the ALJ gave "[c]areful consideration . . . to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 03-2P, 2003 WL 22814447, at *7. For example, the ALJ gave "significant weight" to the opinion of consultive psychologist Dr. Stuart L. Kutz, Jr., who performed a mental status exam of Plaintiff. (Doc. # 11-2 at 21.) For his prognosis, Dr. Kutz assessed that "[r]elative to a competitive work setting throughout an 8 hour day, **not considering pain or physical factors**, [Plaintiff's] attention/concentration, persistence and pace and task completion, and social adaptation would be mildly to moderately impaired." (Doc. # 11-11 at 636) (emphasis added). The ALJ also gave "significant weight" to the opinion of state agency psychologist Sara Sexton (Doc. # 11-2 at 21), who assessed Plaintiff as "partially credible" in part because of "evidence of symptom exaggeration" (Doc. # 11-3 at 97). Dr. Sexton did not address Plaintiff's CRPS. In crediting such weight to the opinions of these two psychologists, the ALJ failed to carefully evaluate how Plaintiff's pain affects her capacity to do work-related physical and mental activities, as is required by SSR 03-2P.

Furthermore, the ALJ did not comport with SSR 03-2P's instruction that in cases involving CRPS, "third-party information, including evidence from medical practitioners who have provided services to the individual, and who may or may not be 'acceptable medical sources,' is often critical in deciding the individual's credibility." SSR 03-2P, 2003 WL 22814447, at *7. The ALJ noted that treating chiropractor Courtney Conley "is not an acceptable medical source," and it appears to the Court that the ALJ gave no

15

weight to the opinion or treatment records of Dr. Conley, who had been treating Plaintiff for the eight months prior to the hearing before the ALJ in this case. (Doc. # 11-2 at 22.) However, SSR 03-2P specifically lists chiropractors as an example of a third-party medical practitioner who can provide information that "is often critical" in evaluating an individual's subjective symptoms in CRPS cases. SSR 03-2P, 2003 WL 22814447, at *7. The ALJ also did not seek out additional information to assess Plaintiff's subjective pain symptoms and the effects of those symptoms on her daily activities and capacity to work. *Id.* at *8.

Because the ALJ did not meaningfully address Plaintiff's CRPS or the substance of SSR 03-2P, the Court "is uncertain whether the ALJ was aware of the characteristics of this 'unique clinical syndrome' and the Administration's policy for evaluating claims based on [CRPS]." *Carroll*, 2017 WL 559581, at *5 (quoting *Volk*, 2012 WL 4466480, at *5). The ALJ also did not correctly evaluate Plaintiff's subjective symptoms consistent with SSR 03-2P. *See, e.g.*, *Squires*, 2021 WL 4197716, at *6 (finding reversible error where "the ALJ [did] not specifically discuss [a c]laimant's severe impairment of CRPS in his evaluation of [the c]laimant's subjective testimony"). Accordingly, the Court finds that the ALJ's decision is not supported by substantial evidence and is not based upon proper legal standards.

For these reasons, the Court remands the order to the ALJ to (1) evaluate Plaintiff's CRPS in accordance with SSR 03-2P, including an evaluation of the intensity, persistence, and limiting effects of her symptoms; (2) re-evaluate Plaintiff's subjective

symptoms, (3) reconsider Plaintiff's RFC; and (4) conduct any other proceedings deemed appropriate.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court REVERSES the decision of the Commissioner and REMANDS the matter for further administrative proceedings consistent with this Order.

DATED: December 6, 2021

BY THE COURT:

*(signature)*
CHRISTINE M. ARGUELLO
United States District Judge

---

[7] Because Plaintiff's first objection is dispositive, the Court declines to address Plaintiff's remaining arguments as they may be impacted by the ALJ's redetermination on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *see also Volk*, 2012 WL 4466480, at *4 ("The failure to adequately consider and address [CRPS], in accordance with SSR 03-2P, undermines the ALJ's determinations with respect to the medical opinion evidence, Plaintiff's credibility, and the RFC determination.").